UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


RICKY PURYEAR,

       Plaintiff,

v.                                                   3:03-cv-473

DAVID MILLS et al.,

       Defendants.


## MEMORANDUM OPINION

This is a *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The matter is before the court on the defendants' motion for summary judgment. Plaintiff has not filed a response to the motion for summary judgment and the court deems plaintiff to have waived his opposition to the dispositive motion. *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd mem.*, 577 F.2d 740 (6th Cir. 1978); E.D.TN. LR7.2. For the following reasons, the motion for summary judgment will be **GRANTED** and this action **DISMISSED**.

I.   Standard of Review

Rule 56(c) of the FEDERAL RULES OF CIVIL PROCEDURE provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). *See also Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *Securities and Exchange Commission v. Blavin*, 760 F.2d 706, 710 (6th Cir. 1985). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

> Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. The dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.

*60 Ivy Street Corp. v. Alexander*, 822 F.2d at 1435-36 (citations omitted).

Once the moving party presents evidence sufficient to support a motion for summary judgment, the non-moving party is not entitled to a trial merely on the basis of allegations.

The non-moving party must present some significant probative evidence to support its position. *White v. Turfway Park Racing Association, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990); *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). Mere allegations of a cause of action will no longer suffice to get a plaintiff's case to the jury. *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989).

Summary judgment should not be disfavored and may be an appropriate avenue for the "just, speedy and inexpensive determination" of an action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

II.  Factual Background

Plaintiff filed this action while in the custody of the Tennessee Department of Correction (TDOC) and housed at the Brushy Mountain Correctional Complex - Morgan Site (BMCX); he has since been released from custody. The defendants are David Mills, former warden of BMCX, and Howard Cook, then TDOC Acting Assistant Commissioner of Operations. Plaintiff's complaint concerns an alleged denial of his First Amendment right to freedom of religion.

3

As an attachment in support of their motion for summary judgment, the defendants have submitted the affidavit of David Mills. Plaintiff has not filed a countervailing affidavit or otherwise responded to the motion for summary judgment. Rule 56(e) of the FEDERAL RULES OF CIVIL PROCEDURE provides, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Nevertheless, the United States Court of Appeals for the Sixth Circuit has found that a plaintiff's verified complaint, to the extent that the allegations therein are based on personal knowledge, satisfies the requirements of Rule 56(e) as an opposing affidavit. *Hooks v. Hooks*, 771 F.2d 935, 945-46 (6th Cir. 1985). *See also Williams v. Browman*, 981 F.2d 901, 904-05 (6th Cir. 1992); 28 U.S.C. §1746. Plaintiff signed his complaint declaring under penalty of perjury that the complaint was true and correct. Accordingly, this court will consider the verified complaint, to the extent it contains allegations based on personal knowledge, as plaintiff's affidavit under Rule 56(e).

The affidavits and documents filed by the parties disclose the following facts: Plaintiff ordered a book from Kingdom Identity Ministries. On January 31, 2003, plaintiff was notified by defendant Mills that the book had arrived at the prison but would be returned after 30 days. The material was rejected because it appeared to be of a supreme race nature. Plaintiff was advised that he or the sender could appeal the decision to defendant Cook.

4

Case 3:03-cv-00473   Document 19   Filed 05/10/05   Page 4 of 9   PageID #: 4

Michael K. Hallimore, director of Kingdom Identity Ministries, send a letter dated February 25, 2003, to defendant Cook, protesting the decision to reject the material and emphasizing the religious nature of the material, particularly with reference to the Christian Identity Faith. In his response of March 18, 2003, defendant Cook advised Mr. Hallimore that the TDOC would not permit any materials associated with security threat groups, which included supremacist groups that advocated separation of the races and used religion as a means to promote their philosophy.

Defendant Mills specifically testifies that on January 17, 2001, while housed at the Turney Center Industrial Prison, plaintiff was confirmed as a member of the security threat group Brotherhood Forever, an offshoot of the Aryan Nation. Defendant Mills states he personally reviewed the book from the Kingdom Identity Ministries and determined that it contained material that was potentially inflammatory toward minorities and therefore posed a security risk.

Attached as an exhibit to defendant Mills' affidavit is a copy of the relevant TDOC policy with respect to inmate mail, which provides as follows:

> C. Incoming mail shall be handled as follows:
>
> ...
>
> 3. Incoming mail may be determined to be a threat to the security of the institution and returned to the sender if, in the opinion of the warden, it could reasonably be considered to :
>
>     a. Be an attempt to incite violence based on race, religion, sex, creed, or nationality.

5

> b. Advocate, facilitate, or otherwise present a risk of lawlessness, violence, anarchy, or rebellion against government authority.
>
> c. Be an attempt to incite disobedience toward law enforcement officials or prison staff.
>
> d. Be an attempt to give instructions for the manufacturing of use of intoxicants, weapons, explosives, drugs, drug paraphernalia, or other unlawful items or substances.
>
> e. Contain obscene photographs, pictures, or drawings, including publications and advertisements from distributors.
>
> f. Contain plans to escape, unauthorized entry into the institution, or information or maps which might aid an escape attempt.
>
> g. Contain information relating to security threat group activity or use of codes and/or symbols associated with security threat groups.
>
> h. Contain materials specifically found to be detrimental to prisoner rehabilitation because it could encourage deviate criminal sexual behaviors.

Exhibit A, TDOC Policy # 507.02, Inmate Mail (effective February 1, 2002).

Plaintiff further alleges that on August 1, 2003, during a video-taped broadcast of the Nation of Islam service, the speaker made racially discriminating remarks toward the Caucasian race. According to plaintiff, he filed a grievance on this but that the Nation of Islam continued to hold services. Defendant Mills states that the alleged Nation of Islam broadcast on the Chaplain's Channel occurred after he left BMCX to become warden of West

Tennessee State Penitentiary. It is his understanding that the Chaplain's Channel was discontinued to prevent further abuse.

III.   Discussion

Prisoners have a First Amendment right to practice their religious beliefs. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). This right is not unlimited, however. All that is required under the First Amendment is that prisoners be provided "reasonable opportunities" to practice their religion. *Id*. In addition, prison regulations may restrict an inmate's First Amendment rights.

> "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law."

*Pell v. Procunier*, 417 U.S. 817, 822 (1974).

When a prison regulation infringes upon an inmate's religious practices, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). As the Supreme Court has noted,

> [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."

7

> Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

*Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) (footnote omitted) (citations omitted) (quoting *Pell v. Procunier*, 417 U.S. 817, 823 (1974)). Thus,"[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policy and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547.

As noted earlier, defendant Mills testifies by affidavit that he personally reviewed the book from Kingdom Identity Ministries and determined it was racially inflammatory. Plaintiff does not deny that the book was racially inflammatory, but rather emphasizes the book's religious nature. Pursuant to TDOC policy, however, it was within defendant Mills' discretion to refusal plaintiff possession of the book. Such refusal was reasonably related to the essential goal of maintaining prison security, given defendant Mills' conclusion that it could incite violence based upon race. *See, e.g., Goss v. Myers*, No. 99-5544, 2000 WL 125905 *1 (6th Cir. January 28, 2000) (unpublished decision) (prisoner's civil rights action for the rejection of mail concerning "Hebrew Isrealite [*sic*] Identity Christian/White Separatist" religious beliefs was properly dismissed in light of need to preserve prison security); *Bruton v. McGinnis*, No. 96-1409, 1997 WL 139797 *1 (6th Cir. March 26, 1997) (unpublished decision) (prisoner's civil rights action for rejection of materials associated with

8

the "Christian Identity" faith was properly dismissed based upon legitimate penological interests).

To the extent plaintiff appears to allege disparate treatment based upon the Nation of Islam broadcast, there is nothing in the record to suggest that the defendants encouraged or otherwise approved of the allegedly unconstitutional conduct. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

IV. <u>Conclusion</u>

The defendants are entitled to judgment as a matter of law and their motion for summary judgment will be **GRANTED**. This action will be **DISMISSED WITH PREJUDICE**. The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the FEDERAL RULES OF APPELLATE PROCEDURE.

**AN APPROPRIATE ORDER WILL ENTER.**

   s/ Thomas W. Phillips   <br>
United States District Judge